## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LIEUTENANT COLONEL          )
GREGORY E. BROWDER,         )
United States Army          )      No: _____
7708 Hilltopper Court       )
Springfield, Virginia 22153, )
                            )
               *Plaintiff*, )
                            )
        v.                  )
                            )
HONORABLE MARK T. ESPER     )
Secretary of the Army       )
(in his official capacity)  )
The Pentagon                )
Room 3E700                  )
Washington, D.C. 20301      )
                            )
            *Defendant*.    )

### COMPLAINT FOR JUDICAL REVIEW

For his Complaint against defendant, the Honorable Mark T. Esper, Secretary of the Army (in his official capacity), plaintiff alleges as follows:

### Parties

1.  Plaintiff is an officer on active duty in the United States Army, who has served on active duty for over 33 years.

2.  Defendant, the Secretary of the Army, is sued in his official capacity as Secretary of the Army.

### Jurisdiction

3.  This action is one arising under the Constitution or the laws of the United States pursuant to 18 U.S.C. § 1331.

Plaintiff seeks judicial review of the decision of the Secretary's delegee upon the recommendation Army Board for Correction of Military Records pursuant to the Administrative Procedure Act 5 U.S.C. § 702. Declaratory relief is authorized under 10 U.S.C. § 2201.

**Venue**

4.   Venue lies in this Court pursuant to 18 U.S.C. § 1391(e)(1)(A).

**Facts Relevant to All Counts**

5.   Plaintiff was commissioned during August 1995 following completion of Reserve Officer Training Corps training and undergraduate degree.

6.   Plaintiff has served continuously on active duty since he was commissioned an officer.

7.   Prior to the events at issue in this Complaint, plaintiff enjoyed a high degree of success as an Army officer. Plaintiff's assignments and achievements included:

a.   Completion of the National War College, Fort Leslie McNair, Washington, D.C.;

b.   Combat deployment in Iraq in 2006;

c.   Assignment to Joint Duty with the Office of the Joint Chiefs of Staff between June 2015 and May 2018, for which he was awarded the Meritorious Service Medal;

2

   d.   Plaintiff was awarded several additional personal
decorations for superior meritorious performance, including: 4
additional Meritorious Service Medals, two Joint Meritorious
Commendation Medals and one Army Commendation Medal; and,

   e.   Served as Battalion Commander on two occasions,
the first as Commander, Army Reserve Intelligence Battalion,
from January 1997 through May 1997 and second as Commander, 377th
Military Intelligence Battalion, from September 2012 through
June 2014.

### Background Facts

   8.   Between 1 October 2013 and 7 October 2013, plaintiff
submitted two complaints for redress under Article 138, UCMJ, 10
U.S.C. § 938 seeking redress from his superior Commanding
General alleging application of selective standards for two
periods: September 2012 through July 2013 and between February
2013 and June 2013.  Both complaints were denied on technical
procedural grounds unrelated to the merits.

   9.   On 5 November 2013, plaintiff ordered an Army
Regulation ("AR") 15-6 command investigation into reported
security violations of a female SGT/Civilian Unit Administrator
("UA").  The investigating officer substantiated that the SGT/UA
had violated security regulations by allowing other individuals

3

to use her common access card (CAC) to access systems and violated regulations by certifying her won entitlement to pay.

10.   On 7 November 2013, following his release from hospital for suicidal ideations, CPT A was reassigned out of the 377th MI Bn.

11. On 24 November 2013, plaintiff submitted a request to the Secretary of the Army to waive the technical enforcement of Article 138, UCMJ limitations in order that his complaint might be substantively investigated.  On 19 December 2013, the Office of the Army Judge Advocate General responded to plaintiff denying plaintiff's request for substantive investigation, again on technical procedural grounds.

12.   On 22 December 2013 plaintiff made an Inspector General complaint to the U.S. Army Reserve Command Inspector General ("IG") against his superior Commanding General.  On 11 July 2016, the USARC IG sent a letter to plaintiff informing plaintiff that his allegations had not been substantiated.

13.   On 18 February 2014, the Deputy Commander Military Intelligence Command appointed a Lieutenant Colonel Judge Advocate officer to investigate the command climate in the 377th Military Intelligence Battalion ("MI Bn").

14.   On 10 April 2014, after interviewing at least 30 soldiers in the 377th MI Bn, the investigating officer concluded,

4

by a preponderance of the evidence, that the battalion leadership treated Soldiers with fairness, respect and equity; they demonstrated a fair and balanced approach to battalion processes and procedures that assured consistent decision making across the full spectrum of ranks and military statutes; promoted and safeguarded the morale, physical well-being and general welfare of officers and enlisted Soldiers; implemented a health promotion policy and suicide prevention; with no unresolved Equal Opportunity complaints.

15.   On 1 April 2014, plaintiff issued a referred change of rater Officer Evaluation Report ("OER") to CPT A as Headquarters Commander, which referenced a protected communication by a Sergeant who violated security regulations by allowing other individuals to use her common access card ("CAC") to access systems, certified her own entitlement to pay, both in violation of regulations, and referred to uncorrected misconduct of other Soldiers under CPT A's command.

16.   On 2 April 2014, CPT A requested a Commander's Inquiry into his OER pursuant to Army Regulation ("AR") 623-3.  The MIRC Commander appointed an investigating officer to conduct the Commander's Inquiry.  The investigating officer interviewed the 377th MI Bn Executive Officer ("XO") during the evaluation period, the Assistant 377th MI Bn S1 Officer, the S1

Noncommissioned officer in Charge (NCOIC), the Staff S6, the
Headquarters Training Non-Commissioned Officer and A Company
Commander.  Plaintiff was not interviewed.

17. The investigating officer reported that it was his
opinion that CPT A was "set up for failure" as his First
Sergeant (who also was not interviewed) was chosen for him, and
that the First Sergeant was not up to the task of providing NCO
leadership in a Headquarters Detachment.  The investigating
officer concluded that the environment was toxic, plaintiff, his
Bn XO and Bn staff provided CPT A minimal or no support and that
the OER therefore, indicated bias, lack of objectivity and
fairness and that the OER should be repudiated and both rater
and the senior rater (also not interviewed) be disqualified as
rating officials.

18.  On 6 August 2014, the MIRC Commander issued a
memorandum stating that as a result of the inquiry, he concluded
that the evaluation contained unproven derogatory information
without any formal counseling of the Soldier to substantiate the
remarks.  The MIRC Commander also found that plaintiff failed to
counsel CPT A during the rating period and that the senior rater
was unfamiliar with CPT A and relied upon plaintiff's
recommendations in completing the senior rater portion of the

OER.  The MIRC Commander recommended that the OER be stricken from CPT A's Official Military Personnel File.

### IG Investigations

19.  Concurrent with his request for a commander's inquiry, on 2 April 2014, CPT A filed a Department of Defense Inspector General (DoDIG) Military Whistleblower Reprisal complaint alleging that the referred OER was a form of reprisal for having made protected communications.  DoDIG referred the complaint to MIRC for investigation.

20.  THE MIRC IG interviewed 10 witnesses for the reprisal investigation.  How the 10 witnesses were selected was omitted from the report of investigation, however, with the exception of plaintiff and his XO, the witnesses were uniformly adverse to plaintiff.

21.  During the course of the IG investigation, the IG was provided a copy of an AR 15-6 re-investigation to review the prior investigations of plaintiff and his immediate superior, gather additional evidence and further evaluate the same issues investigated in the two previous inquiries.  Upon reinvestigation under Article 15-6, the investigating officer concluded that the command climate fell far short of being one in which "all Soldiers were treated with fairness, equity and respect."

7

22.   Based on the testimony of 9 witnesses interviewed by
the MIRC IG, the CPT A OER, the commander's inquiry and decision
to recommend removal of the OER and the "re-investigation" of
the command climate, the MIRC IG substantiated the finding that
plaintiff rendered an unfavorable OER to CPT A as a reprisal for
making protected communications.  The MIRC IG findings were
forwarded to the DoDIG for review.

23. The DoDIG approved the MIRC IG findings and concluded
that investigation was adequate and contained no material
deficiencies and determined that the findings recommendations
and documentary evidence was complete and that the analysis and
conclusions were supported by the evidence.

24.   ON 4 June 2014, an AGR staff officer submitted an IG
complaint against plaintiff and his XO alleging that they: 1)
misused Foundry 2.0 for missions other than is sole purpose of
military intelligence training; 2) creating  negative command
climate that affected  morale by intimidating, bullying and
harassing soldiers in the 377th MI Bn; and, 3) created a policy
that violated regulations causing undue hardship on Soldiers on
Contingency Operations-Active Duty Operational Support (CO-
ADOS") orders by having Soldiers break their CO-ADOS orders to
attend Annual Training ("AT").

25.  The Commander MIRC appointed a civilian XO to conduct an AR 15-6 investigation into the allegations.  The investigating officer interviewed 12 witnesses.  No indication was contained within the report of investigation as to how the 12 witnesses were selected.

26.  Based upon the consideration of the statements of the 12 witnesses interviewed, the investigating officer concluded, by a preponderance of the evidence, that plaintiff and his XO improperly treated subordinates with a lack of dignity, respect, fairness and consistency required by regulations.  The investigating officer found that neither plaintiff nor his XO improperly allocated Foundry Funds or required troop program unit Soldiers serving on CO-ADS orders to break their CO-ADOS orders to attend AT.

27.  On 26 October 2016, based upon the findings of the AR 15-6 investigation described, *supra*, in paragraphs 25 and 26 above, and 5 additional interviews conducted by the MIRC IG, the MIRC IG concluded that plaintiff treated subordinates with a lack of dignity, respect, fairness and consistency in violation of AR 600-100 (Army Leadership) and Article 92, UCMJ (violation of a lawful order).

28.  Based upon the two substantiated allegations – issuing a reprisal OER and treating subordinates with a lack of dignity,

9

respect, fairness and consistency, the MIRC former-Commander
(who was then assigned to United States Africa Command)issued
plaintiff a General Officer Memorandum of Reprimand (GOMOR) for
the negative command climate in plaintiff's former unit.
Another GOMOR was issued by the Commanding General ("CG")
Military District of Washington ("MDW") for the alleged reprisal
OER written on CPT A.

29.   Both of these GOMORs were issued in violation of
regulation, which plaintiff pointed out in his rebuttal matters
submitted to the CG, MDW who then ordered them removed from
plaintiff's OMPF on 25 January 2017 and 16 March 2017,
respectively. In taking his action, the CG, MDW concluded that
there was compelling evidence that plaintiff had not created an
adverse command climate.

30.   With respect to the alleged reprisal OER
investigation, the CG, MDW determined that some of the witness
statements were not credible and that the investigation had not
considered other important information concerning the
allegations.  The CG, MDW concluded that plaintiff did not
intend to reprise against CPT A for protected communications in
preparing the OER.

31.   On 24 October 2017 and 25 July 2017, plaintiff
submitted a request to the DoDIG and DAIG that they reconsider

their IG investigations in issuing a reprisal OER and on creating a negative command climate.   Plaintiff supported his request with à 40 page memorandum with 45 attachments supporting his request. The Army Board for Correction of Military Records ("ABCMR") summarized the content of the 45 evidentiary attachments at pp. 16 through 27 of the ABCMR Record.   (Attached hereto as Appendix I and incorporated by reference).

32.   On 17 November 2017, the DAIG completed their reconsideration of the findings of DAIG case DIH 17-1595.   The DAIG asserted that plaintiff had failed to present evidence that would cause an amendment to the allegation in accordance with AR 20-1.

33. The DAIG prepared a 10 page analysis of 14 witness statements and the reconsideration documents and witness statements. The DAIG concluded that the substantiated allegation of adverse command climate would not be amended but did conclude that the allegation that plaintiff violated Article 92, UCMJ – a criminal violation -- was not appropriate and removed that specification of the allegation.

34. On 6 December 2017, the DoDIG denied plaintiff's request for consideration, asserting that plaintiff had not provided new or compelling information or extenuating circumstances to overturn the original determination of reprisal

11

by plaintiff in CPT A's OER or to support further action regarding plaintiff's complaint that the OER was not issued as a reprisal for protected communication.

35. On or about July 2017, plaintiff submitted an Application for Correction of Military Record to the ABCMR. Plaintiff submitted the 40 page memorandum with 45 attachments described, *supra*, at ¶ 31.

36. On 6 March 2018, plaintiff added three additional witness statements, including the following:

a. Letter dated 2 Mar 16 from COL H a former Brigade Commander and Deputy Commander of the MIRC between 2006 to 2008 and who was familiar with plaintiff due to mentoring plaintiff for over 13 years, including the period in which plaintiff commanded the 377th MI Bn.

b. Letter dated 15 Feb 18 from COL W former deputy commander of the Combat Support Agency Support Command a Brigade level command in MIRC co-located at Fort Belvoir with the 377th MI Bn who was a percipient witness to plaintiff's conduct in command as well as interactions with Soldiers under plaintiff's command in the 377th MI Bn.

c. Letter dated 7 February 18 from the investigating officer who conducted the command climate AR 15-6 investigation in early 2014. The investigating officer re-affirmed the

findings of his investigation that he concluded Soldiers in 377th MI Bn were treated with fairness, respect and dignity.

37.  On 18 April 2018plaintiff submitted four additional documents to the ABCMR in support of his Application:

a.  2Page Power Point Presentation "Local Command and Investigations," setting out the timeline of investigations.

b.  E-mails concerning re-assignment of a unit member Sergeant First Class.

c.  A 16 March 14 e-mail sent by plaintiff to himself showing attachment of CPT A's OER and containing text similar to comments placed in CPT A's OER.

d.  A List of 13 witnesses prepared to testify at an ABCMR hearing.

38.  On 30 April 18, plaintiff provided the following additional documents:

a.  Request to the Army Human Resources Command ("HRC") dated 27 September 2016 requesting Standby Promotion Board request with three enclosures.

b.  Memorandum from plaintiff to the President of the Command Review Board, HRC, dated 30 Jun 2017 titled Rebuttal for Delay of Command and Referral to Command Review Board with 9 enclosures.

c.  DoD Hotline Reprisal Complaint against MIRC former command element dated 5 Oct 2017 with 8 enclosures.

d.  A copy of his statement to the personal appearance board dated 22 Apr 18 consisting of 31 pages.

39.  On 30 April 18, plaintiff presented his case to a personal appearance board at the ABCMR.  Plaintiff presented the testimony of 10 witnesses who attended in person to provide testimony under oath.  The witness statements are summarized in the Board Record of Proceedings, Appendix I, at pp. 31-37 and are incorporated by reference herein.

40.  Plaintiff testified under oath at the ABCMR personal appearance.  Plaintiff's testimony is summarized at the ABCMR Record of Proceedings pp. 37-38 (Appendix I), which is incorporated by reference herein.

41.  Following the personal appearance of plaintiff and consideration of the in-person testimony provided by plaintiff, the ABCMR made the following findings:

a.  The Board reviewed all of the evidentiary documents and considered the personal appearance testimonies by the applicant and ten witnesses from all levels of command who had personal knowledge of the circumstances surrounding the allegations that the applicant issued a reprisal OER to CPT A and failed to treat subordinates with dignity, respect, and fairness.  The Board found by a preponderance of the evidence that the investigations that led to these findings were biased and that they did not consider all available evidence in a balanced manner and chose evidence that supported preconceived findings prejudicial to applicant.  These biased findings were

14

presented to the DIAG and DODIG without acknowledging that there was equally valid evidence available that might exonerate applicant.

b. In support of the Board's finding of biased and incomplete evidence in the investigations, the Board noted that the DAIG in its review of the investigations stated that, "We found this case (whistleblower reprisal OER) difficult to review because some of the actions and assumptions were unclear and we were not able to clarify all of the facts" and that "[t]he DAIG noted the ROI (MIRC IG) lacked clarity and failed to addressed adequately the reprisal and restriction allegations." Since a a quantity of evidence was the same in both investigations, the Board found that these statements by the DAIG were applicable to both investigations.

c. The Board found as unacceptable that the investigation of applicant's treatment of subordinates was closed by MIRC without an interview and witness statement from the Applicant who was located at Fort McNair less than 30 miles from Fort Belvoir where the MIRC was located. The applicant testified that he contacted the MIRC to provide witness testimony but MIRC closed the investigation without interviewing him or others he would have provided [to] give balanced testimony. It appears that the findings by the MIRC were based on less than a preponderance of the evidence. Accordingly, the Board finds that the investigations provided to the DAIG and DODIG were defective and biased.

d. The Board also found that the investigations that led to the substantiation of allegations were conducted for the most part well after the applicant had departed the command successfully and that no negative comments or ratings were made in applicant's officer evaluation reports by his raters or senior raters during the period of his command of the 377th MI BN. The Board found it particularly disturbing that the applicant's rater was not included as one of the key witnesses in the investigations. The Board also viewed the issuance of GOMORs to the applicant well after the fact and not through the applicant's current chain of command to be further evidence of bias.

*See* Appendix I.

15

42. Based on the above findings of fact, the Board determination/recommendation was as follows:

[a.] The Board determined by a preponderance of the evidence that the investigations relative to the applicant were not initiated or conducted in a fair or unbiased manner. This bias and unfairness against the applicant precluded fair and impartial investigative proceedings, which in turn calls into question the investigative findings. Army officials above the applicant appear to have inappropriately influenced the investigations, the investigations' review process, and ultimately the investigations' findings. As a result the Board recommends that the following investigations be removed from Army records:

[1.] The MIRC ROI 7M14-0056 (failing to treat subordinates with dignity, respect fairness and consistency), closed on 26 October 2015, including all attachments and exhibits.

[2.] DAIG Findings on MIRC ROI 7M14-0056.

[3.] DAIG Reconsideration of ROI 7M14-0056

[4.] AR 15-6 investigation, Headquarters MIRC dated 11 September 2014, subject Findings and Recommendations of allegations against LTC Gregory Browder and Major Kelley G; with all attachments and exhibits.

[5.] DAIG memorandum dated 5 January 2016, subject Whistleblower Report of Investigation (Ashworth, Billy CPT/DIH 14-6157); with all attachments and exhibits.

[6.] MIRC ROI 7M14-0052, dated 30 July 2015, subject: Whistleblower ROI; with attachments and exhibits.

[7.] AR 15-6 Investigation, Headquarters MIRC, dated 28 July 2014, subject: AR 15-6 Investigation, 377th MI BN; with all attachments and exhibits.

[b.]   The Board recommends that the DODIG review the findings of DIH 14-6157 considering that the aforementioned investigations will have been removed.

[c.]   In light of the foregoing, the Board recommends that the applicant be reconsidered for FY16 promotion to Colonel by a standby promotion board, and that he be reconsidered for command selection.

*Id.*

43.   On 21 June 18, the Acting Assistant Secretary of the Army (Manpower & Reserve Affairs) ("ASA (M&RA)") signed a memorandum that incorrectly states that the ABCMR members "unanimously recommended full relief."   *See* Appendix II.   In actuality, the ABCMR unanimously recommended specific, but *partial* relief.

44.   The ASA (M&RA) stated in his memorandum that he had "reviewed the findings, conclusions, and Board member recommendations.   I find there is sufficient evidence to grant partial relief."   *Id.*

45.   The ASA (M&RA) failed to approve or disapprove any of the ABCMR recommendations for specific corrective action, including removal from the files of the specified investigation reports, reconsideration of plaintiff for promotion for FY16 and reconsideration for command, as recommended by the ABCMR.

46.   Instead of taking action on the Board recommendations supported by specific factual findings, the ASA (M&RA) instead

17

directed: "that all Department of the Army Records of the individual concerned be corrected by directing The Inspector General to reinvestigate the allegations of mistreatment of subordinates and the allegation of Whistleblower OER reprisal regarding the individual concerned.  Additionally, I recommend that the Department of Defense, Office of the Inspector General, reinvestigate all such allegations regarding the same individual."  *See* Appendix II.

47.   The ASA "requested" that necessary administrative action be taken to effect the correction of records as indicated "no later than **15 September 2018**."  *Id.*

## COUNT I.

### (Arbitrary and Capricious Failure to "Correct" a Record)

48.   Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

49.   Defendant, the Secretary of the Army, acted (through his delegee) arbitrarily and capriciously and contrary to law by failing to correct any record actually in existence, of and concerning plaintiff, and by ordering a "reinvestigation", but no corrective measures to records found by the ABCMR that were "initiated or conducted in a fair or unbiased manner", and which "bias and unfairness against the applicant precluded fair and impartial investigative proceedings. . . ." and in which "Army

18

officials above the applicant appear to have inappropriately influenced the investigations, the investigations' review process, and ultimately the investigations' findings."

## Count II.

### (Arbitrary & Capricious Failure to Correct Records in Existence Found "Biased and Unfair" by the ABCMR)

50.   Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

51.   Defendant, the Secretary of the Army, acted (through his delegee) arbitrarily and capriciously and contrary to law by failing to take appropriate corrective action to correct records then identified by the ABCMR and in existence that the ABCMR determined were unfair and biased denying plaintiff "thorough and fitting relief."

## Count III.

### (Arbitrary & Capricious Failure to Either Approve or Disapprove ABCMR's Findings and Recommendations)

52.   Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

53.   Defendant, the Secretary of the Army, acted (through his delegee) arbitrarily and capriciously and contrary to law by failing to either approve or deny the unanimous findings and

recommendations of the ABCMR and thereafter ordered Army actions
that failed to afford plaintiff any relief from the biased and
unfair investigations that contained reportable adverse
information on plaintiff that would prejudice plaintiff in
future promotion and command selection opportunities.

### Count IV.

### Arbitrary and Capricious Failure
### to Address Promotion and Command Reconsideration

**54.** Plaintiff incorporates and restates each of the above
paragraphs as if fully set forth herein.

55. Defendant, the Secretary of the Army, acted (through
his delegee) arbitrarily and capriciously and contrary to law by
failing to address plaintiff's request for, and unanimous ABCMR
favorable recommendation that plaintiff receive consideration
for promotion by a DA Stand-By Promotion Board and reconsidered
for selection to Colonel Command.

### Count V.

### (Arbitrary and Capricious Failure
### to Articulate a Basis for Decision)

**56.** Plaintiff incorporates and restates each of the above
paragraphs as if fully set forth herein.

57. Defendant, the Secretary of the Army, acted (through
his delegee) arbitrarily and capriciously and contrary to law by

failing to articulate any basis for failing to correct plaintiff's record as recommended by the ABCMR and failing to minimally explain why the thoughtfully considered relief recommended by the ABCMR based upon hundreds of pages of documentary evidence and an in-person hearing before the ABCMR should not be approved and implemented.

WHEREFORE plaintiff requests that this Court enter judgment for plaintiff against defendant and order the following additional relief:

1) Set aside the decision of the Acting Secretary of the Army as arbitrary and capricious and contrary to law and declare as void any "reinvestigation" that used, incorporated exhibits or relied on, in any way, the evidence or reporting of the biased and unfair investigations recommended by the ABCMR for removal be declared void.

2) Remand the case to the Secretary of the Army for reconsideration of the findings and recommendations of the ABCMR and appropriate corrective action in accordance with law and regulation to the records challenged by plaintiff and supported by the ABCMR's findings and recommendations;

3) Order defendant to pay plaintiff's legal fees and expenses as the prevailing party pursuant to the Equal Access to Justice Act; and,

4)   Order such other relief as the court may deem warranted on the record.


Respectfully submitted,

Charles W. Gittins
(DC Bar #429710)

152 Emperor Lane
Lake Frederick, VA 22630
(540) 327-2208
(866) 722-2798(fax)
e-mail:  cgittins@aol.com

*Counsel for Plaintiff, LTC Browder*